UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO: 4:05CV-019-M**

**DONALD TROY BLACK**                                                                                    **PLAINTIFF**

**V.**

**JEFFERSON PILOT FINANCIAL**
**INSURANCE COMPANY**                                                                              **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendant, Jefferson Pilot Financial Insurance Company [DN 13], for an entry of judgment. Also before the Court is a motion by Plaintiff, Donald Troy Black [DN 14], for summary judgment. Fully briefed, these matters stand ripe for decision. For the following reasons, Defendant's motion is **DENIED**, and Plaintiff's motion is **DENIED.**

**I. BACKGROUND**

This action, brought pursuant ERISA, 29 U.S.C. § 1132(a)(1)(B), arises out of a claim for total disability benefits by Plaintiff, Donald Troy Black ("Black"). Plaintiff made this claim shortly after suffering a back injury. Plaintiff made the claim under a Group Long Term Disability Insurance Policy ("Policy") that Defendant, Jefferson Pilot Financial Insurance Company ("Jefferson Pilot"), issued to Gibbs Die Casting, the employer of the Plaintiff.

Plaintiff, who weighed in excess of 300 pounds, injured his back on or about October

16, 2002 when he fell at his home. On January 23, 2003, Dr. Matthew Kern ("Dr. Kern") performed a ten hour surgery on Black. On or about March 29, 2003, Black made a claim for long term disability benefits under the Policy. His income at the time was $2,470 per month. The Policy provides in pertinent part:

BENEFIT. The Company will pay a Total Disability Monthly Benefit to an Insured Employee, after completion of the Elimination Period; if he or she:

1. is Totally Disabled;
2. is under the regular care of a Physician;
3. at his or her own expense, submits proof of continued Total Disability and Physician's care to the Company upon request.

"Gainful Occupation" means any occupation in which the Insured Employee:

1. is or could reasonably become qualified, considering his or her education, training, experience, mental and physical abilities;
2. could reasonably find employment, considering the demand in the national labor force; and
3. could earn (or reasonably expect to earn) a before-tax income at least equal to 60% of his or her Predisability income, within 12 months of returning to work.

"Total Disability" or "Totally Disabled" will be defined as follows.

1. During the Elimination Period and the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of his or her regular occupation; and
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured is unable to perform each of the main duties of any Gainful Occupation.

The "Elimination Period" is a180-day period during which no benefit is payable even if the claimant is disabled as defined under the Policy. The contract at issue does not contain an "Own Occupation Period." Thus, the issue is whether Black was "Totally Disabled" as that term is defined in part two of the definition of "Totally Disabled."

After his surgery, Black had a number of follow-up visits with various doctors. On February 12, 2003, Dr. Kern wrote that Black said that he had "absolutely no back pain." On March 12, 2003, Dr. Kern similarly noted that Black was "doing great." On April 14, 2003, Black stated that he was "doing fairly well and "sitting up a lot" with his son. He also asked Dr. Kern if he could go turkey hunting. On May 13, 2003, Black told Dr. Kern that "he is doing much better...and that his strength is definitely improving." Based primarily on this record of improvement, Jefferson Pilot denied Black's request for long term disability benefits. In so concluding, Jefferson Pilot noted that "[a]ccording to the Transferable Skills Report created based on your current level of impairment, 78 sedentary jobs were generated that are within your gainful range and your proximity. Examples of these include: escort-vehicle driver, document preparer, and eyeglass polisher."

After mid-2003, the medical evidence indicates that Black's condition took a turn for the worse. For instance, Dr. William B. Bebout ("Dr. Bebout") wrote on October 6, 2003 that Black "is now requiring a cane to walk." Dr. Bebout further stated that he "did not feel that Mr. Black is going to go back to being gainfully employed after this injury and subsequent surgical procedures." On February 3, 2004, Dr. Kern stated about Black that "he is not going to be able to do any type of manual labor activity in the future and should therefore, in my opinion, be considered totally disabled." In light of this information, Black appealed the denial of benefits. Jefferson Pilot asked for but did not receive any new medical information. On April 14, 2004, Jefferson Pilot denied Black's appeal on the grounds that "Mr. Black's claim file does not support a condition or conditions, which would render him

-3-

totally disabled from any occupation."

On July 14, 2004, an Administrative Law Judge ("ALJ") concluded that Black was disabled as that term is defined under the Social Security Act. In making that determination, the ALJ relied in part on the findings of a Dr. Johnson, who evaluated Black on April 8, 2004 and "determined that [Black] would be unable to sustain work activity on a full time regular basis." The ALJ concluded that though Black "has the residual functional capacity to perform the exertional demands of a reduced range of sedentary work," he can no longer perform work for 8 hours a day and for 5 days a week. In light of the favorable ruling from the ALJ, Plaintiff's counsel requested that Jefferson Pilot revisit its determination as to the issue of Total Disability under the Policy. On August 30, 2004, Dr. Bebout wrote that "I do not think that [Black] is going to recover enough to be employed...His back problem is further compounding his general health in that he is unable to exercise or work appropriately to get rid of his weight, thus he has continued to have hypertension." On October 1, 2004, Jefferson Pilot considered Black's claim for Total Disability benefits for a third time but again denied it. In the denial letter, Jefferson Pilot advised Black that he had "exhausted all appeal rights." Black filed this action on January 27, 2005.

## II. DISCUSSION

In its motion for entry of judgment, the Defendant argues that Black does not meet the Policy's definition of the term Totally Disabled, though doctors and the Social Security Administration may deem him to be Totally Disabled. In his motion for summary judgment, Black contends that he is Totally Disabled as defined under the Policy and that Defendant's

determination otherwise was arbitrary and capricious.

"The purposes of ERISA are to promote and protect the rights of employees and their beneficiaries in employee benefit plans." Anderson v. Great West Life Assurance Co., 942 F.2d 392, 394 (6th Cir. 1991). Thus, in ERISA cases, federal courts review a plan administrator's denial of benefits de novo, "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 613 (6th Cir. 1998)(citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). In this case, the Plan Administrator has discretionary authority to determine benefits, and neither party disputes that the arbitrary and capricious standard of review is appropriate. "A plan administrator has broad discretion in deciding questions of coverage and eligibility for benefits. This court has held repeatedly that the appropriate determination in reviewing the decision of a plan administrator with respect to a claim for benefits is whether the decision was arbitrary, capricious, made in bad faith or otherwise contrary to law." Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir.), cert. denied, 488 U.S. 826(1988)). When a plan administrator has discretionary authority to determine benefits, courts review a decision to deny benefits under "the highly deferential arbitrary and capricious standard of review." Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 380 (6th Cir. 1996).

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was rational in light of the plan's provisions.

Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." <u>Williams v. International Paper Co.</u>, 227 F.3d 706, 712 (6th Cir. 2000)(internal citations and quotations omitted). "[A]n ERISA benefit plan administrator's decisions on eligibility for benefits are not arbitrary and capricious if they are 'rational in light of the plan's provisions.'" <u>Miller v. Metro. Life Ins. Co.</u>, 925 F.2d 979, 984 (citing <u>Daniel</u>, 839 F.2d 263, 267).

If an SSA disability determination is in the record, "an ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits under an ERISA plan. [E]ntitlement to Social Security benefits is measured by a uniform set of federal criteria. But a claim for benefits under an ERISA plan often turns on the interpretation of plan terms that differ from SSA criteria." <u>Whitaker v. Hartford Life & Accident Ins. Co.</u>, 404 F.3d 947, 949 (6th Cir. 2005). However, "[p]lan administrators...may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." <u>Calvert v. Firstar Fin., Inc.</u>, 409 F.3d 286, 294 (6th Cir. 2005).

Based on the evidence in the record, it was arbitrary and capricious for Jefferson Pilot to deny Black benefits under the Policy. The focus of the Defendant's argument is that Black "could perform some of the main duties of at least a sedentary job." Regardless of the truth of that premise, Defendant's conclusion as to whether Black is Totally Disabled under the Policy does not follow. To be Totally Disabled under the Policy, an individual must be "unable to perform each of the main duties of any Gainful Occupation." The term "gainful occupation," in turn, is defined in part as an occupation in which an individual "could earn

(or reasonably expect to earn) a before-tax income at least equal to 60% of his or her Predisability Income, within 12 months of returning to work." Neither party focuses on that definition. However, unless the Court is missing something, it would appear that any decision regarding total disability under the terms of this policy requires not only an analysis of whether the claimant can perform some work, but it must also include an analysis of whether the work which can be performed is likely to earn the claimant at least 60% of his predisability income. Jefferson Pilot's conclusion that "if a fellow can hike the woods in pursuit of the elusive wild turkey he can surely do some kind or work" fails to consider the entire question. Assuming Jefferson Pilot is correct and Plaintiff can work a sedentary job, how many hours can he reasonably work each week? What can he reasonably expect to earn each week? These questions need to be resolved before one can make a disability determination in this case without acting arbitrarily. Since Jefferson Pilot fails to address these questions, the Court finds that it was arbitrary and capricious for Jefferson Pilot to conclude that Black is not Totally Disabled in light of the Policy's definition of "Gainful Occupation." The Court has not fully addressed Plaintiff's motion for summary judgment, and in light of this opinion, will not do so unless and until the matter returns here.

### III. CONCLUSION

For the foregoing reasons, the motions for judgment are **DENIED** [DN 13 and 14]. **IT IS FURTHER ORDERED** that this matter is remanded to the Plan Administrator for a proper determination of Plaintiff's total disability claim in light of the issues addressed in this memorandum opinion. Pursuant to the Policy, the Company may have Black examined "by

a Physician, specialist or vocational rehabilitation expert of the Company's choice." Plaintiff, at entirely his discretion, also may supplement the record with additional evidence if he so chooses. Each party has **ninety (90)** days to supplement the record with any relevant information. After the **ninety (90)** day period, the Defendant will, in accordance with the terms of the Policy, have **forty-five (45)** days to process the claim and send Plaintiff a written decision addressing his claim, barring any special circumstances. If the Plaintiff receives a decision that he views as unfavorable, he shall have **thirty (30)** days to request a claim review. The Defendant will have **forty-five (45)** days from the date of such a request to process the appeal, barring any special circumstances. If the Plaintiff again receives an unfavorable disposition as to his claim, he may, at that point, seek review in this Court, as he will have exhausted his administrative remedies by seeking two administrative reviews.

cc: counsel of record
05cv-019Black1